## NILES' WORKS *v.* THE CITY OF CINCINNATI.

### (No. 9,132.)

1. The right of any proprietor of land through which a natural water-course runs, is to make such use of the water and to erect such structures over the stream as will not interfere with the rights of other proprietors above or below.

2. A proprietor has no right to change the channel of a water-course by means of a sewer, and throw the water upon the land of his neighbor in a different place or direction from that in which it before flowed; if he does so, and his neighbor continues the sewer, only ordinary care and diligence is demanded of the neighbor in the construction of such extension of the sewer, so far as he is concerned.

3. Where a natural water-course runs through part of a city which is subdivided into lots and intersecting streets, and a proprietor undertakes to construct a sewer on his particular premises, as a substitute for the natural water-course, he is bound to contemplate and make provision for the future increased flow of water occasioned by the usual and ordinary improvement of the streets, as also of the lots fronting on these streets, within the limits of the territory naturally drained by the water-course.

4. Where a municipal corporation, by a change of grade in the public streets, has caused an increase flow of water in a natural water-course, such fact is not relevant to the question of liability on the part of the corporation, in a case of the breakage and overflow of a sewer built by the plaintiff, after such change of grade, as a substitute for this water-course on plaintiff's premises.

Niles' Works *v.* The City of Cincinnati.

SPECIAL TERM.—Action to recover fifty thousand dollars damages, claimed to have been incurred by the plaintiff, by the breakage and overflow of a sewer.

The plaintiff, a corporation organized, under the laws of the State of Ohio, for manufacturing purposes, became, in the year 1854, the owner of certain leasehold premises, situate on the west bank of the Miami and Erie canal, about sixty-one feet north of Front street, in the city of Cincinnati. The premises were occupied by the plaintiff for machine shops, in the manufacture of engines and various other iron machines, together with a large iron foundry situate on the canal side. The plaintiff's lessors, J. S. & J. M. Niles, in the year 1844, prior to the erection of said buildings on the premises, and for the purpose of improving and supplying a substitute for a natural water-course, known as Deer Creek, which ran across the premises, caused a stone sewer of eight feet interior diameter to be constructed through the premises, from north to south, situate a few feet west of and parallel to the canal bed, and connecting with a sewer shortly afterward built through Dr. Morehead's premises on the north, and emptying on the premises of Nicholas Longworth on the south; and the waters flowed thence diagonally across Longworth's premises, and found their way to the canal, at the abutment of the stone bridge across Front street. Longworth subsequently in the same year continued the sewer across his lot, but it washed away before it was completed and Longworth abandoned the undertaking. The defendant, in the year 1856, for the purpose of protecting the bridge abutment, with the consent of Longworth, and at the city's expense, caused a similar sewer to be constructed across Longworth's property, extending in a curve from the Niles' sewer to the waste wier of the canal at the bridge. In the midst of a heavy rain on May 5, A. D. 1858, the sewer under plaintiff's foundry broke, causing one side of the foundry to tumble down, causing great destruction and loss of property, and putting a stop to plaintiff's business.

26

Plaintiff sought to recover a compensation from the city of Cincinnati, claiming that the sewer across Longworth's lot, as built by the city, was such an obstruction of the waters of Deer Creek that it caused plaintiff's sewer to break; and also claiming that the city had increased the quantity of waters draining into Deer Creek, and that by reason thereof, the curved sewer across Longworth's premises became insufficient to carry off the flow, and the pressure caused the sewer of plaintiff to break and the injury complained of to occur.

It was in evidence that Deer Creek was a natural watercourse, originally draining an area of a thousand and seventeen acres, and emptied into the Ohio river at the mouth of the Miami and Erie canal. The stream meandered through the valley, crossing the lands of many different owners, and that as early as 1831, the State of Ohio, in the construction of the canal, caused a large semi-circular sewer, twenty feet wide and ten feet high, to be laid in the bed of the creek, above Eighth street. That the respective owners within the city limits, began one after another, to straighten that part of the stream on their own premises, making the course thereby more direct, and each severally and at times, by combination of owners, inclosed the stream in a sewer. The city authorities, from time to time, built sewers under the streets that crossed the stream, and at times assisted toward the construction of others on private property, so that at length after many years, every owner of land south of Court street had inclosed the stream across his land, making thereby a continuous line of sewerage from Court street to Front street, although not of uniform capacity, structure or dimensions, and having a descent of 46.01 feet in that distance.

It was also in evidence that the area originally drained into Deer Creek had been increased from 1,017 to 1,066 acres, by reason of change in the grades of the streets and the construction of sewers leading toward Deer Creek; that public and private improvement of the surface of the ter-

ritory drained thereto, had been extensive, and that the effect of such improvements by grading, paving and covering with stones, buildings, etc., was to lessen the absorption of water, and quicken the flow, and increase the concentration at any particular point within a given time; that the increased rapidity of concentration would add at least ten per cent. to the quantity of water delivered at a particular point in a given time.

During the progress of the trial, Joseph Seifert, a witness introduced on behalf of the plaintiff, testified that there was a part of the city which naturally drained westwardly into Mill Creek on the west of the city and not into Deer Creek, which, however, had been brought to drain into the Deer Creek sewer by changing the grades of certain of the streets of the city, prior to the time of the construction of the sewer through plaintiff's premises.

The witness was proceeding to state what portion of the city was so changed in its drainage, when objection to the testimony was interposed by the counsel for the defendant, as being incompetent and irrelevant, it not appearing that the plaintiff or its lessors were interested in the property when any of the changes of the grades of the streets were made, and the sewer of plaintiff having been built in view of the grades as they were at the time of its construction, in the year 1844. The objection was sustained by the court, and the plaintiff entered its exception to the ruling.

The counsel for plaintiff then asked the witness what increase the city had caused in the flow of water into the Deer Creek sewer, since the construction of plaintiff's sewer in the year 1844, by the paving or improving of new streets and pavements in those parts of the city, before that time unimproved, or but partially improved.

To this the counsel for defendant made objection, as being incompetent and irrelevant, for reason that it appeared that the premises occupied by the plaintiff was a lot, in a subdivision of an original city lot, containing streets laid out and established before the year 1844, and for reason that the

usual and ordinary improvements of the streets, as also upon the lots fronting on the streets, and the flowing of water thus occasioned being a matter necessarily in the contemplation of the plaintiff's lessors, when they built the sewer through their premises as a substitute for the natural water channel.

The objection was sustained by the court, and the plaintiff entered its exception to the ruling.

*Taft & Perry* for plaintiff.

*Hart & Disney* and *George E. Pugh* for defendant.

GHOLSON, J., charged the jury as follows;

This action was brought by the plaintiff to recover for an injury sustained by the falling down of a building occupied as a foundry, the consequent destruction of property, and an interruption to business.

The plaintiff had a lease upon the lot and building for ten years, and was bound to keep the building in repair. The costs of such repairs, if the verdict was for the plaintiff, together with the injury to its personal property, and inconvenience to its business, would be proper matters to be taken into consideration in assessing the damages.

The defendant denied any liability whatever for the injury of which the plaintiff complained.

It appears from the pleadings and evidence, that in early times there ran through the limits of the city of Cincinnati a natural water-course, known as Deer Creek.

The right of any proprietor of lots of land, through which this water-course ran, was to make such use of the water, and to erect such structures over the stream, as would not interfere with the rights of the owners above or below. If a portion of the city through which the stream runs was subdivided into lots, and streets were laid out and dedicated, running to or across the natural water-course, a right to the

use of the streets in connection with the water-course, for the discharge of water from the lots fronting on the streets would be created.

Persons who might afterward become possessed of the lots through which the water-course passed, would hold them subject to the right to the use of the streets for the discharge of the water.

If the owner of a lot through which the water-course flowed in its natural channel, should choose to substitute an artificial one, it would be his duty to see that it was sufficient for all the purposes of the natural one.  When such an artificial channel is constructed by one proprietor, he must take care that he does not prevent the accustomed flow of the water in the natural channel from above, or injuriously increase it, or change its course below.

If one proprietor, having constructed such a channel, the proprietor below desires to continue it, he may do so; but if he constructs one of an insufficient size, or in an insufficient manner, and is thereby injured, it is his own loss.

When an artificial channel for a water-course has been constructed by one proprietor, and structures connected with it are erected upon his property, and this artificial channel is continued by a construction for the purpose, through the land of a proprietor below, whether the latter will be responsible for an injury to the former, may be a question of care and diligence.

A man has no right to change the channel of a water-course, by means of a sewer, and throw the water upon the land of his neighbor in a different place or direction from that in which it before flowed.  If he does, and as a matter of agreement, or for the protection of his own property, the neighbor continues the sewer, he is only bound to use ordinary care and diligence in its construction, and does not become an insurer against any injury resulting to the sewer above, or to structures connected with it, and which may be affected by its destruction.

In this case, if it appears from the evidence that a loss and

injury happened on the land or premises occupied by the plaintiff, it must sustain it, unless it show affirmatively a right to place it elsewhere. This is claimed on two grounds. First, that the city, improperly and without right, increased the flow of water through the sewer from above.

Second, that the city, improperly and without right, obstructed the flow of water from the sewer through the lot of the plaintiff from below. The city had the right, having constructed the sewer under the streets, to use it for the same purpose for which the natural water-course was subject to be used—the discharge of the water passing along the gutters in the street. If it was used in an ordinary and proper manner for such purpose, there would be no liability on the ground of any increase in the number of buildings erected on the lots. The improvement of the city must be considered as having been within the contemplation of the parties at the time of making a subdivision of lots containing a dedication of streets.

If the city had, carelessly and improperly, brought into the sewer by means of the openings in the streets, a large quantity of water, a liability might result for any injury caused to the sewer of the plaintiff, but not if the increase of the water was caused by improvements. Against the latter it would be the duty of the plaintiff to guard, in the construction of the sewer through its property.

As to the obstruction claimed to have been caused by the continuance of the sewer, by the city, from the premises of the plaintiff through the property of Longworth, the jury would inquire first, as a question of fact, did this obstruction cause the injury complained of upon the premises of the plaintiff? This the plaintiff must show to the satisfaction of the jury, and if it failed to do so, the jury need inquire no further as to this branch of the case.

If the jury were satisfied that the insufficiency or imperfection of the sewer, constructed by the city through the property of Longworth, caused an obstruction of the water passing through the sewer of the plaintiff, and the injury

resulted therefrom, it did not necessarily follow that there was a liability on the part of the city.

The city, representing Longworth, the owner of the property, and the plaintiff, stand as the proprietors of contiguous lots of land, through or by which a natural water-course originally flowed.

The plaintiff changed, by means of an artificial channel or sewer, the course and direction of the water, and threw it upon the land of Longworth at a place, and in a manner different from what it was before.

There is evidence, tending to show some arrangement between the plaintiff, or those it represents, and Longworth, for a continuance of the sewer through his land. A sewer for this purpose was, it appears, constructed by Longworth. This was found not to answer, or was objectionable for some reason, as shown by the evidence, but not, so far as appears, upon the ground of obstruction.

To obviate this matter, and under the circumstances shown in the evidence, to which the jury will have reference, the city undertakes the construction of a sewer from the lot occupied by the plaintiff, through the land of Longworth, to Deer Creek. Now, as between the city and the plaintiff, or those whom the plaintiff represents, under the circumstances disclosed by the evidence, the city would not be absolutely liable for any defect or imperfection in the sewer, but for such a defect or imperfection as the exercise of ordinary care and diligence might have guarded against. It will be for the jury to determine, upon the evidence, and having regard to the nature and use of the structure to be made, whether the requisite care and diligence was used.

It is admitted that the thing to be constructed was one requiring skill, the failure to exert the needful skill, if not obtained, or from inattention, would be negligence. The jury will inquire whether there was want of skill on the part of those employed to plan or construct the sewer, and also whether there was an omission to use the requisite skill. If competent men were not employed, or if, under

the evidence, there was failure to use that skill which works of the kind have been shown by the evidence to require, a case of negligence would be established. The city, as representing the adjoining owner of property, either under an agreement or for its own protection, had no right to act wantonly or with gross ignorance and neglect, even to guard against any flow of water proceeding from the sewer of the plaintiff. But if the city acted with good faith, and exercised proper care and diligence, such as an ordinarily prudent and careful owner of property under such circumstances would do, then there is no liability to the plaintiff.

Verdict for defendant.

A motion for a new trial was made and overruled, and a judgment entered for the defendant, which was subsequently affirmed in general term.